Kevin Dudley, Counsel for Appellees, Matheson Flight Extenders, Inc. Okay, can we get an appearance from the Appellants' Council, please? Yes, good morning. This is Amy Thiry on behalf of the Appellants. Okay, this is Judge Lafferty, and one thing I meant to mention in the overall comments, but I'll mention now. If you'd like to reserve some time for rebuttal, you can. Just tell us how much. I'll take three minutes, please. Okay, and again, we've got a little clock here, and I hope that's visible to you. We let you monitor that, so if you go into your three minutes and you're making the best argument you ever made, we're not going to stop you, but it's up to you. If you want to stop early, that's fine. If you want to otherwise invade your time, it's up to you. We'll give you a heads-up when you're getting at your three minutes, just so you know, okay? Okay, you may proceed. Thank you. May it please the Court, I represent appellants who are seven former employees of the debtors, Matheson Flight Extenders and Matheson Trucking, who sued their employers for unlawful employment discrimination and retaliation under federal employment law. Debtors' businesses involved sorting and transporting mail for the United States Postal Service as a contractor. The Postal Service was the debtor's primary client. In February 2015, a Colorado federal court held a jury trial, and the jury found my clients liable for the unlawful employment discrimination claims. Well, they didn't find your clients liable, right? They found them. They gave them an award. I'm sorry, the debtors held them. And in that case, the jury awarded $15 million, a million in compensatories, and $14 million in punitive bail. Well, I mean, here's a point that's going to come up in Part 2 of this. It was a very exact award, correct? Yes. Yeah, okay. $968,000 in compensatories, and then I think each of the seven got almost $2 million. Right, right. Yes, that's correct. Right. So, appellants also filed motions for front pay, judgment interest, and attorney's fees and costs. They believe that their total award should be close to $18 million. Less than two months later, MFE, Matheson Flight Extenders, filed its voluntary petition under Chapter 11 in the District of Nevada. MTI, Matheson Trucking, Inc., was a co-proponent of MFE's plan in that case, even though it was never a debtor. Appellants filed their proofs of claim, totaling $17.9 million, including the original awards, plus what they sought in additional awards and fees and costs. Debtors initially proposed to separately classify and subordinate the punitive damage components of my client's claims, but debtors thereafter offered a global settlement, which my clients accepted. The parties executed a settlement agreement that the debtors then incorporated into their second amended Chapter 11 plan in Nevada. The Nevada Bankruptcy Court entered its final and binding confirmation order on December 28, 2015. Through the settlement, debtors proposed to pay and appellants accepted payments totaling $7.3 million. Can I jump in for a second? There's actually a lot to talk about here, and I want to give you a sense of where we're getting a little stuck.  Okay. And, by the way, thank you for the background. It's a long case, and it's a very important background. I'm not suggesting it isn't. But if you would focus more on the basis on which, after confirmation of the second plan, the Bankruptcy Court basically subordinated a bunch of claims, and the reliance on 1129A7 to get there, because I don't think the — correct me if I'm wrong — I think the Bankruptcy Court carefully said, I'm not relying on 510. So if you could address the 1129A7 aspect of this, I'd be very grateful. Sure. Certainly, Your Honor. So when the plan administrator filed the objection to my client's claims post-confirmation last year in February of 25, the basis was Section 510C, equitable subordination. Right. And when we got to oral argument, Judge Klein, sua sponte, raised Section 726A4 as the basis to subordinate. And in the opinion, Judge Klein failed to analyze Section 510C. Instead, he relied upon 1129A7 to get to apply 726A4. And my argument with respect to why 1129A7, the best interest creditor's test, does not apply, is that it presumes that my client's claims are still punitive damages, which we can test because the claims were transformed into contract debts.  Yes, sir. I'm sorry. Can I give you another thought about that, which is kind of where we're more focusing? And I'm going to be a little bit colloquial here. 1129A7 is a statute that is utilized to demonstrate that the proponent has or has not complied with all the requirements of bankruptcy to confirm a plan, right? Yes. How do you, here's my colloquial part, how does the trial court get in the way back machine and five months after confirmation invoke 1129A7? I mean, it just seems totally out of place to us. It does to me, too. I looked for cases that would use 1129A in a context post-confirmation. I couldn't find it. So I would say that it's the same reason I argue there's a claim preclusive effect of the original Nevada bankruptcy court order confirming their plan. It's the same standard because this plan confirmation order. I mean, even if there isn't, I think you're arguing you have an independent basis to complain of the judge's determination because 1129A7 just isn't useful in this context. It's useful in the context of can we confirm a plan? And it really, I, you know, we question how it can be folded into something, a plan, a claim objection process, five months later. I mean, there's also the question of, look, the plan was confirmed, right? And the plan didn't deal with this issue one way or the other. So your thoughts about that would be very helpful. Your Honor, I personally think this decision is a reverse engineering to get to the result. It's a very result-oriented decision. The court knew it could, the Section 510C requirement of creditor misconduct could not be satisfied. I mean, it's very evident. The court even failed to analyze Section 510C. And just for clarification, it's not our job to do it here. We're not going to find a bunch of facts. That's not on the table in my view. So go ahead. Thank you. But, again, it's because the judge wanted to do an end run around Section 510C. So he used 1129A7 to make 726A4 applicable in the Chapter 11 context when Section 103B makes that improper and does not permit it because that section only applies in Chapter 7 cases. So, Your Honor, I'm on the same page with you. I don't think 1129A7 is applicable in a post-confirmation claim objection process period. And I think it's wrong and it's reversible legal error. Do you believe that it's reverse or reverse and remand? It's reverse. And, Your Honor, I'm asking for a remand with direction to allow my client's claims in the full amount of $3.7 million. But the 510 hasn't been applied? Correct. That was the issue that was brought, wasn't it? Right. But, Your Honor, they can't satisfy it. Creditor misconduct does not exist. But that's not for us. Judge Laverty was saying that that's beyond our scope. Okay. Fine. Then it would have to be a remand. I understand you need findings of fact on 510C. Well, if you want to indulge me here, do you want to take a quick shift over to the disallowance issue? When you say disallowance, is that the Murgio case? I don't believe the court really addressed the question of disallowance versus subordination. The court subordinated under 726A4, didn't really specifically, quote, disallow. In this context, it's a disallowance. Right. This plan doesn't provide for a subordinated class for punitive damage claims. I guess a little bit more directly, and if I'm skipping over some things, I'm just trying to get your analysis out on the table. Would you agree that this was a liquidated damages type scenario and that, therefore, an unenforceable penalty analysis pertains? Your Honor, with respect to – I would say ultimately that when my clients and the debtors entered into that original settlement agreement, there was a capping of the debtors' total expenditure from approximately 18 million down to 10. So I don't think it's quite the same thing as liquidated damages to the extent that when you enter into a contract, you're trying to determine in the future what the potential damages would be. We already have damages determined. I mean, the whole predicate of this is the jury did that. Yes. That's the – the jury told you down to the penny what the damages were. That's correct. Liquidated damages are to assess in advance damages that would be uncertain in the future. That's correct. And here we knew what the damages were, and it was a reduction of the total amount, I think 44 percent. So as a matter of fact, it can't be a penalty. Well, this happens all the time in bankruptcy settlements too. Somebody comes in with a claim. You go to a settlement conference. You say we'll agree to X, but if you don't do it, it goes up to Y. This holding, if allowed, would apply to every one of those situations, wouldn't it? I would think so, Your Honor. Again, I think the bankruptcy court erred, and it should be reversed. Well, look, I took you off track, so I'm sure you had many other great points you wanted to make. You've got another 240 before you are into your rebuttal time. Thank you very much. I mean, you know, there are seven issues on appeal. There's a lot to cover. But here I'll highlight the two other points we haven't addressed yet, which are the claim preclusive effect of the Nevada Bankruptcy Court's confirmation order that transmuted, so to speak, my client's punitive damage judgment awards into contract debts. It became a new contract between the debtors and my clients. We only get to that if we believe that 726 is applicable post-confirmation, correct? Otherwise, it's apples and oranges. Yes, I agree. This is a completely alternative basis. Okay. So it's an alternative basis for your ruling and why the court should be reversed. But the point is, you know, my clients don't have punitive damage awards. They agreed to settle their claims. They received payments, 27 payments over almost seven years under the settlement. They honored that by filing proofs of claim in these bankruptcy cases that capped their damages at the settlement amounts. And the court's order uses the standard for issue preclusion instead of claim preclusion in disregarding the argument that there was a claim preclusive effect of the bankruptcy court's final order in Nevada because it said that issue was not fully and actually litigated in Nevada. However, that's not the standard. It's whether or not there's an opportunity to fully litigate. And they had that opportunity because my clients filed their proofs of claim based upon their punitive damage awards in the bankruptcy court in Nevada, and they were scheduled as disputed. So, Your Honor, I believe claim preclusive effect is another basis, and then judicial estoppel is the other argument I'd like to raise if I have a moment. So here, I believe the debtors are playing fast and loose with the courts because they obtained a benefit when they got their plan confirmed in Nevada, which allowed them to settle those punitive damage claims against them and allowed them to reorganize. And now here they are after getting the benefit of that settlement, allowing to continue to operate with the United States Postal Service as their primary client over those seven years. And I cite to the reply brief that I filed about the joint letter that was filed or sent to the Postal Service after the settlement was reached. But in that instance, the debtors got the benefit of that. Now they stand before this bankruptcy court in California and say, my client's claims are punitive damages when they settled them seven years ago. And then finally, they've obtained a substantial benefit to my client's detriment because if this order is allowed to stand, my clients will not receive a 26 percent distribution on account of their claims. So I believe the arguments or the position the debtors have taken in this case should be, you know, denied based upon judicial estoppel. Okay. We've got a little over two minutes left. Do we have time to pause? Thank you. Yes, thank you. Okay. Good morning, Your Honors. Let me address first the question. Yeah, you've got an idea where we're a little perplexed, right? Yeah. 1129A7 imposes a distributional priority. Can I stop you there? Yeah, go ahead. This is a good point to jump into a question I have. I am struck, in my view, how close this parallels Espinoza. As you are well aware, in Espinoza, court confirmed a plan that allowed for the discharge of a nondischargeable debt after the performance of the 13 plan came back and said, obviously we've got to fix this because you can't confirm a plan that does something that should not happen. The Supreme Court said that is the court's obligation to ensure that. But if it doesn't happen, the judgment is the judgment. Why are we hearing a confirmation issue as a basis for a claim objection when it was your clients that proposed the plan and got it confirmed on that basis? Well, two reasons. First, the plan, Article 9.1 of our plan, expressly preserved the ability of the plan administrator. Well, we're going to get to that on a matter of public policy in the Ninth Circuit's instruction to us in a minute. But go ahead and make the point. We're going to have a long conversation about that. So, yes, it preserved the ability to object to or seek subordination. But you're not objecting. You're retroactively applying a confirmation standard based upon 1129, not 726. Your clients had the option to file a Chapter 7 and invoke 726. It went with a liquidating 11. So I guess we're all in agreement that if we had filed a – if our plan said that the Camara plaintiff's claims would be subordinated. We're also in agreement they didn't. Yes, but the plan also provides that we have the ability to seek subordination of any claim. Well, let me – If I may just finish, Your Honor. Section 502B1 says that a claim can be disallowed if it's unenforceable under applicable law. It's not applicable law, Mr. Coleman. You're not in Senate. Applicable law is that the fact that there is a distributional priority that is imposed in Chapter 11 cases. And you waived it. You sought a plan that provided for full payment. Your clients, that's mysterious judicial estoppel. I'm sorry. Which are you – when you say we waived that, what are you referring to? By asking for confirmation of plan that provided for full treatment, equivalent treatment of all unsecured creditors, including mysterious clients. You had the chance to invoke 726 through the confirmation process. And you chose not to. Well, in that case, there were two important distinguishing features. Number one, all the creditors were being paid in full in the 2015 bankruptcy case. We're not talking about 2015. As Judge Lafferty indicated, that is history. It's informative. But it's not applicable here. Okay. Then so we propose a plan that preserves our ability to object to or seek subordination of the Kamara plaintiff's claims on any grounds. And you're saying that we don't have any grounds to object to their claim. And my response is – No, no, no. You have plenty of grounds to object to it. It could be untimely. It could be this. It could be that. But you can't, as Judge Lafferty said, go in the way back and then relitigate confirmation standards as a basis for claim objection. Well, I guess, again, there is a vast body of case law going back decades which disallowed claims for punitive damages. That's applicable. That's not the issue. Also – That is not the issue. The issue is how do you use a statute that's set up as a gatekeeping statute? You cannot confirm a plan unless you satisfy this. You confirm the plan. This didn't come up. That's Judge Spraker's point. You cannot reinvigorate. We are not aware of a process or case law that says you get to reinvigorate 11-29-87 for this purpose. That is not 11-29-87's purpose as far as we can tell. And how do you get around Espinoza? Well, I would say that we get around Espinoza because our plan expressly preserves – Apples and oranges. That's what you're hearing us say. That is a different section for a different purpose. You're relying upon cases decided mostly well before Law v. Siegel to say there's a general equitable right to get rid of punitive damages because they're punitive. And I don't know how you get around Law v. Siegel either because 510 gives you the express statutory provision to equitably subordinate. And you are asking us to reach back to those cases that say there's a general undergrinding that that's punitive and we won't let that happen for a reorganization. And this is not a reorganization. It's a liquidation that you chose to run through Chapter 11. Yes, that's correct. But I guess what I'm still struggling with is we do have the statutory authorization to object to claims. I think that Law v. Siegel is – there's well-recognized authority for the treatment of punitive damages claims in Chapter 11. Well, can I – I hate to keep breaking it, but let me – go ahead. I mean whatever. Finish it. The real reason that I want to – the thing that I need – we all need to focus on here is who is harmed by this. And it's not the debtors who are being harmed. It's the interests of the other creditors who hold their claims based upon actual pecuniary loss. And could have objected as well and had the opportunity and a clear right under 1129A7 to object. Usually that's called a waiver. Well, but in circumstances again where the ability to object on any grounds is preserved, what you're basically imposing upon the debtors and a plan administrator is to scour every nook and cranny of the claims register and determine that there's a basis to subordinate a claim. Well, I mean hardly, hardly, counsel. I mean let's go back a couple steps, okay. First of all, although I don't think it's necessarily case determinative, there is a history here. These were originally punitive damages claims awarded by a jury. They had a certain treatment in a prior plan. I'm not suggesting that cleansed them or changed them necessarily the way that your worthy adversary would like us to think. But you could not have been unaware of the fact that there were some punitive damages issues here. You had a general reservation in the plan. That's fine. But the liquidation analysis didn't deal with this issue at all. At all. And number two, the way we read instructions to us in the Massengale case, which is a case in which, you know, we basically felt bound by certain, you know, code provisions to enforce a fairly harsh outcome. And the Ninth Circuit told us, well, wait a minute. In the plan confirmation process, it is required that there be really full disclosure. You don't speak with, you know, two directions out of your mouth. A general reservation of rights in this strikes me as not consistent with the obligations of debtors in possession under Massengale, as the Ninth Circuit tells us, and under Solamano framing as we decided about a year later relying on Massengale. So I realize you've got a general reservation. I don't see how that's applicable here. It certainly gets you over the obligation to give these people a heads up at the time of confirmation when this had not been brooded at all that there was some danger here. Well, I guess, Your Honor, I would say that there's prior decisions of this panel, the Network Electronics Corporation case, that found that this was sufficient to, you know, preserve the ability to object to the claim. I'm not suggesting this would be the sole grounds for reversal if we end up reversing, but it's troubling. It is troubling. Okay. Well, let's turn to why these, you know, the disclosures are important. Usually, you know, if creditors are acting in reliance on certain representations to support a plan, I could see why these concerns would arise. But whether or not the Camara plaintiffs voted in favor or not, you know, in support of our plan, was immaterial. The plan confirmation in no way hinged on how the Camara plaintiffs… It didn't matter in Solamano either, counsel. It didn't matter at all. It was totally different. The plan was the plan. The question was the treatment. But so, but again, what you're saying is that we need any debtor or trustee who's proposing a plan needs to scrutinize the, you know, the claims register. Isn't that what 1129.87 requires? Isn't that the obligation under Espinoza? When you come to confirmation, you have to affirmatively prove that each of the creditors are going to receive at least as much as they would in a Chapter 7. That was the debtor's burden. Did you meet that burden? Yes, because we thought… Then that's the end of the question. Well, we thought our plan did that by preserving the ability to seek subordination. Where's the preservation of later objections exception to 1129.87? Well, there doesn't have to be an exception. Well, the court has to find, the court has to make a factual finding that each creditor will receive at least as much as they would in a Chapter 7. You're telling me that's not the case now. Why wasn't that the case at confirmation? I think you misinterpreted my comments. What I'm saying is that when a plan explicitly provides that if a claim is subject to subordination on appropriate grounds, it will remain subject to subordination. That's how you satisfy… I'm not talking about your subordination. I'm talking about plan confirmation, which you got. How was the court able to make that determination? By looking at the plan and seeing that it preserves the ability to subordinate claims in an appropriate case. Okay. I'm not following that. If you want to address the disallowance liquidated damages issue, you got about three minutes left. Yes. On this one, I think Nevada law is pretty clear that when the charge imposed for a payment default is grossly disproportionate to any actual damages, it's viewed as a penalty and therefore unenforceable. Is the predicate to that that it's liquidated damages or something else? Well, I think there are reasonable liquidated damages, which are fine. No, no, no, no, not reasonable. Is the predicate to that that this is liquidated damages or is it something else? Judge Klein's predicate seemed to be it was liquidated damages, right? That are grossly disproportionate to any actual damages. No, the threshold question is, is this liquidated damages? And our problem is a jury came down with an award to the penny. There's nothing liquidated about it. It was liquidated. I mean, the parties later decided it should be a little bit less to your client's ultimate benefit. Your Honor, on this point, it's important to keep in mind that the judgment that was entered in the Colorado litigation was not final. There were a number of serious problems with that judgment. Number one. Well, you got over all of them by settling it, didn't you? True. Okay. But that does not, again, that does not change the character of the claim that they had. As we showed in the proceedings below, all of the compensatory components. I agree. I agree. The question is, is this, do we begin with the premise this is liquidated damages? And we're struggling with that. That's what we're trying to tell you. Well, all I can say is that we cite cases in our brief which hold that these are unenforceable penalties. Okay. Okay. In terms of, I just want to address this other issue about judicial estoppel and playing fast and loose with the courts. Settlements get reached in bankruptcy cases all the time. People are not thinking through necessarily all the implications of how things will happen in a subsequent bankruptcy case. The key issue about judicial estoppel is that there has to be an explicit representation to a judge in one case that directly conflicts with the representation or position they're taking in another case. There has been no showing of that here whatsoever. Because the judge in the Nevada bankruptcy case really had no occasion to even consider any of this stuff. There was full payment to creditors with interest, by the way, on the part of the other general unsecureds and unanimous consent by all the creditors. So it took that issue completely off the table. Okay. Your Honor, I realize that you have concerns, but I think that the fact that the nature of the claim is dictated by its origin and nature.  And we preserved the ability to object and to seek subordination to this claim. And it's going to be harmful to the distribution of rights of the other unsecured. Okay. Thank you for your very good argument. And thank you for being such a good sport about the fact this is what's jokingly called a hot bench. I mean, we really struggled with this. And you're hearing our struggles. And thank you for doing such a professional job of responding to our concerns. And let's make one thing clear. I mean, the basis of our concern here is this 1129A7, what we're jokingly calling a reachback. We're not suggesting that if there's 510C grounds, which are not in front of us, we're not suggesting that's resolved. I don't know if it is or isn't. But, you know, I'm making no – I don't think we're going to make – we're not telling you that we're going to make a finding about that one. Because it isn't what we do. You know, our concern is the issues that we've been exploring with you and with your worthy adversary here. Okay? Okay. So back to the appellant's counsel. I think you've got a little over two minutes. Yes, Your Honor. Thank you. I'd like to ask you if there's any questions that I can answer for you based upon opposing counsel's argument. No, I think you're hearing us that we're not purporting to decide something on the basis that the bankruptcy court declined to decide it on. Right? So we're not saying that there's no basis. If this is a vacate and remand, a reverse and remand, we're not suggesting that you're out of the woods here at all. Okay? That's not for us to say one way or the other. That's depending on a whole bunch of other circumstances. I will add my piece in here, though, that there is a concern that what we're struggling with is the reading in to the subordination, the 1129A requirement, which we're struggling with as the basis for the subordination. It's easy to see how that same struggle, at least in my mind, would exist if that's the basis under 510. If you just shift it over and say that the same analysis would seem to apply, that how do you get 1129's best interest test into a 510 analysis? That's the concern that's been raised by this that I would just put on the record. And we will. And there you go. It will be addressed below. Thank you, Your Honor. I'd like to just address the issue that I did raise that I didn't speak to in my opening argument, which is Rule 7001.8 says that if a claim is to be subordinated, it must be brought through an adversary proceeding or through the plan confirmation process. So that procedurally is an issue that the debtors have to face if they're going to now seek to subordinate under 510C. And I just want to make a record on that. Well, and I think we'll also note that the plan could have been modified. Maybe it can't anymore, but it might have been to take account of this issue. And I don't have an opinion as to whether that's still open. I don't know. Okay? Thank you. Okay. Thank you both for your very good arguments. And I mean that sincerely to both of you. You could tell this one really kind of had us scratching our heads a bit. Thank you for your good arguments. The matter is under submission, and we'll get you a written decision as soon as we can. Thank you. Thank you very much. Thank you. Okay. Let's call our second matter.
judges: Brand, Lafferty, and Spraker